**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICKEY HICKS,

                    Petitioner,                     Case Number: 10-15161

v.                                       HON. ARTHUR J. TARNOW

MARY BERGHUIS,

                    Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner Mickey Hicks, a state inmate currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hicks challenges his conviction for unarmed robbery on the grounds that insufficient evidence supported his conviction, his sentence violated the prohibition against cruel and unusual punishment, the trial court failed to act when a witness violated its sequestration order, the trial court gave an improper aiding and abetting jury instruction, corpus delecti was not established, and trial counsel was ineffective. The Court denies the petition.

### I. Facts

Hicks' convictions arise from events that occurred at the Waterford home of John Ledbetter on February 9-10, 2007. Ledbetter testified that, on the evening of February 9, 2007, he was recovering from a broken neck sustained in a car accident. Ledbetter testified that, before returning to his home, he spent 38 days recovering in the hospital. That night, Ledbetter was drinking vodka because he still suffered pain from his injuries. Angela Ball, who had been in the

vehicle with him when the accident occurred, came by his house that evening.  Ledbetter

testified Ball had lived with him for one month in December 2006.  She had not seen him since

the night of the accident because, immediately before the accident, the two had argued.  Ball told

Ledbetter she stopped by to see how he was doing.  Ball then asked whether a friend she had

brought with her could come into the house.  The friend was Hicks.

Hicks asked Ledbetter whether he could have a drink.  Ledbetter said yes, but directed

Hicks to the kitchen to get the drink himself because Ledbetter did not feel well enough to get

up.  After making and consuming one drink, Hicks went into the kitchen to make another,

leaving Ball and Ledbetter alone in the living room.  When Hicks returned to the living room, he

accused Ledbetter of flirting with Ball.  Ledbetter testified that Hicks kicked him repeatedly, first

in the ear, then the cheek, then the chin and nose.  Ledbetter felt Hicks reach into his pants

pocket and take his wallet, which had $300 in it.  Ledbetter heard Ball say, "I think you killed

him."  Ledbetter then passed out.  When he awoke, he walked to his mother's house and phoned

the police.  He later discovered that his checkbook, vicodin, credit card, health insurance, and

credit union cards were missing.  He testified that Ball knew where he kept things in his house

because she had lived with him for a month.  Ledbetter discovered Hicks' jacket and cell phone

in his bedroom, the room where he kept his vicodin and checkbook.

Angela Ball testified that, on the evening of February 9, 2007, she and Hicks went to

Ledbetter's house to drink.  The three drank for several hours, until, Ball testified, she passed

out.  The next thing she remembered after passing out was Hicks grabbing her and taking her

outside.  She testified that she did not rob Ledbetter.  She denied that Hicks gave her money, a

credit card or any vicodin from Ledbetter's house.

2

Waterford Township Police Detective Robert White testified that he was the officer in charge of the case.  He interviewed Ledbetter on February 12, 2007.  Ledbetter picked Hicks out of a photographic lineup as the perpetrator.  Detective White also interviewed Ball.  He testified that she told him that, when she awoke from her alcohol-induced stupor, she saw Hicks push or punch Ledbetter.

## II.  Procedural History

Hicks was charged with unarmed robbery, larceny from a person, and assault and batter.  He was convicted by a jury in Oakland County Circuit Court of unarmed robbery.  On October 11, 2007, he was sentenced as a fourth habitual offender to 11 years, ten months to thirty years' in prison.

Hicks filed an appeal of right in the Michigan Court of Appeals.  He raised these claims through counsel and in a pro per supplemental brief:

I.      Verdict of guilty based on insufficient evidence constituted a denial of due process.

II.     Sentence imposed violated constitutional guarantees against cruel and/or unusual punishment.

III.    The trial court abused its discretion when John Ledbetter openly defied its sequestration order and it did nothing, resulting in prejudice and denial of a fair trial to defendant.

IV.     The trial court reversibly erred and caused manifest injustice when it instructed the jury on aiding and abetting.

V.      The corpus delecti of armed robbery was not established.

VI.     Defendant's appointed trial counsel was ineffective resulting in prejudice and denial of due process and a fair trial to defendant.

3

The Michigan Court of Appeals affirmed Hicks' conviction and sentence. *People v. Hicks*, No. 281385, 2009 WL 387728 (Mich. Ct. App. Feb. 17, 2009).

Hicks filed an application for leave to appeal in the Michigan Supreme Court, raising these claims:

I.      The evidence presented at trial was insufficient to support an unarmed robbery conviction resulting in prejudice and denial of equal protection and due process and a fair trial.

II.     The imposed sentence constitutes cruel and unusual punishment resulting in prejudice and denial of equal protection and due process.

III.    The trial court erred when it denied the motion for a mistrial, resulting in prejudice and denial of equal protection and due process and a fair trial.

IV.    The trial court erred when it instructed the jury on aiding and abetting, resulting in prejudice and denial of equal protection and due process and a fair trial.

V.     Defendant was denied his constitutional right to the effective assistance of trial and appellate counsel, resulting in prejudice and denial of equal protection and due process and a fair trial.

VI.    The totality of the errors resulted in prejudice and denial of equal protection and due process and a fair trial.

The Michigan Supreme Court denied leave to appeal. *People v. Hicks,* 485 Mich. 1008 (2009).

Hicks then filed the pending habeas petition. He raises these claims:

I.      Verdict of guilty based on insufficient evidence constituted a denial of due process.

II.     Sentence imposed violated constitutional guarantees against cruel and/or unusual punishment.

III.    The trial court abused its discretion when John Ledbetter openly defied its sequestration order and it did nothing resulting in prejudice and denial of a fair trial to Hicks.

4

IV.     The trial court reversibly erred and caused manifest injustice when it instructed
        the jury on aiding and abetting.

V.      The corpus delecti of unarmed robbery was not established.

VI.     Hicks' appointed trial counsel was ineffective resulting in prejudice and denial of
        due process and a fair trial to Hicks.

### III.  Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the

writ if the state court identifies the correct governing legal principle from [the Supreme] Court

but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539

U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal

5

court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state

court's decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted);

*see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

of the state court's decision."  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011),

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view

that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,

not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision.  *See Williams,* 529 U.S. at 412.

Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the

principles of "clearly established law" are to be determined solely by resort to Supreme Court

rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness

of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007),

*citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV.  Discussion

### A.  Sufficiency of the Evidence Claim

Hicks' first claim for habeas relief asserts that the prosecutor presented insufficient evidence of unarmed robbery.

The Michigan Court of Appeals, applying the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979), held that the prosecution presented sufficient evidence to sustain Petitioner's conviction.  After reciting the elements of unarmed robbery, the court stated:

> As pointed out by defendant, the victim's trial testimony, 911 call, statement to Officer Thomas Marciniak shortly after the incident, and statement to Officer Robert White days after the incident, all differ slightly regarding the details of defendant's assault upon the victim.  For example, the victim testified that defendant kicked him in the face four times, told the 911 operator that defendant kicked him in the face six times, told White that defendant only kicked him once, subsequently punching him in the face once he was on the ground, and never said a thing to Marciniak about being kicked in the face, but rather, only mentioned being punched in the face. The victim's testimony, and respective statements to the 911 operator and White, also differ slightly from his statement to Marciniak regarding how defendant went about taking his property, testifying that he felt defendant reach into his pocket and grab his wallet, which is consistent with his statement to White and the 911 operator, but inconsistent with his statement to Marciniak that defendant grabbed the victim's wallet off the table.
>
> However, regardless of the inconsistencies between the victim's testimony and his respective statements to the 911 operator, White, and Marciniak, the victim's testimony clearly establishes that an unarmed defendant assaulted the victim (either by kicking or punching the victim in the face), prior to taking the victim's property without his permission (either by taking the victim's wallet directly from

his person and subsequently removing items, or by taking the victim's wallet off the table and subsequently removing items).  Viewing the evidence presented in a light most favorable to the prosecution, it therefore follows that sufficient evidence was presented to support defendant's unarmed robbery conviction.  *See* MCL 750.350; *Johnson, supra* at 125-126; *Ainsworth, supra* at 324, 495 N.W.2d 177. Furthermore, even though the only evidence presented to establish that defendant committed unarmed robbery is either the victim's testimony itself, or testimony based on the victim's statements, and defendant alleges that given the aforementioned inconsistencies, the victim is not credible, this Court must afford deference to the jury's special opportunity and ability to determine the credibility of the witnesses. *People v. Wolfe*, 440 Mich. 508, 514-515, 489 N.W.2d 748 (1992).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the

8

Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of unarmed robbery are: (1) the felonious taking of another's property, (2) by force or violence or assault or putting in fear, when (3) the defendant is unarmed. *People v. Harverson*, 804 N.W.2d 757 (2010). The state appellate court applied the proper standard and thoroughly considered the evidence of Hicks' guilt. Ledbetter's credibility was central to establishing Hicks' guilt. When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Thus, Ledbetter's testimony, viewed in the light most favorable to the prosecution, was sufficient for the Michigan Court of Appeals to reasonably find that Petitioner was guilty of unarmed robbery.

## B.  Sentencing Claim

Second, Petitioner claims that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 2686 (1991). However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S. Ct. at 2705 (Kennedy, J. concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303, 103 S. Ct. 3001, 3008, 3016 (1983)). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'." *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374, 102 S. Ct. 703, 705 (1982) ("[F]ederal courts should be reluctant to review legislatively mandated

9

terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted). The petitioner's sentence did not exceed the statutory maximum for his offense. The court sentenced Petitioner within the guidelines. His sentence was not grossly disproportionate to the crime or the offender. Accordingly, he fails to prove an Eighth Amendment violation.

### C. Violation of Sequestration Order

Petitioner next alleges that the trial court erred in denying his motion for a mistrial when the victim, John Ledbetter, violated the court's sequestration order. Ledbetter entered the courtroom at some time during opening statements. Defense counsel moved for a mistrial, arguing that Ledbetter's testimony likely would be influenced by what he heard. The trial court noted that Ledbetter was present during the defense's opening statement and may have been present for part of the prosecutor's opening statement as well. Nevertheless, the trial court denied the motion for a mistrial, finding no intentional violation of the sequestration order. Further, the trial court noted that the purpose of the sequestration order was to prevent witnesses from discussing their testimony or being influenced by other witnesses' testimony. The court concluded that, since no testimony was taken when Ledbetter was in the courtroom, the concerns of the sequestration order were not implicated.

The Michigan Court of Appeals found no error in the trial court's denial of the motion for a mistrial. The state court reasoned:

> A mistrial should be granted only because of an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial. *People v. Alter*, 255 Mich.App. 194, 205, 659 N.W.2d 667 (2003). Defendant argues that a mistrial should have been granted because he was prejudiced by the victim's violation of the trial court's sequestration order. The purposes of sequestering a witness are to prevent him from coloring his testimony to conform to the testimony

10

of another and to aid in detecting testimony that is less than candid.  *People v. Meconi*, 277 Mich.App. 651, 654, 746 N.W.2d 881 (2008).  To remedy a violation of a sequestration order, a court may hold the offending witness in contempt, permit cross-examination concerning the violation, or preclude the witness from testifying. *Id.*  Exclusion of a witness' testimony is an extreme remedy that should be sparingly used.  *Id.* The inadvertent nature of a violation, the existence of a bench trial, and the fact that a violation only resulted in hearing opening statements (not testimony) are mitigating factors that weigh against the extreme remedy of precluding the witness from testifying.  *Id.* at 654-655, 746 N.W.2d 881.  This Court reviews a trial court's decision regarding what remedy to impose, if any, for an abuse of discretion.  *Id.*

Although defendant did not have a bench trial, . . . no evidence has been presented that suggests that the victim's violation of the sequestration order was purposeful and, furthermore, it is undisputed that the victim only heard short opening statements, not testimony.  Moreover, the nature of the trial court's sequestration order in this instance was merely to prevent witnesses from discussing their testimony with other witnesses.  Given the circumstances, we conclude that the trial court would not have been justified in precluding the victim from testifying, and thus, the trial court did not abuse its discretion when it chose, as the sole remedy, to allow defense counsel to cross-examine the victim regarding his violation of the court's sequestration order.  *See Meconi*, supra at 654-655, 746 N.W.2d 881.  It follows that the trial court likewise did not abuse its discretion when it denied defendant's motion for a mistrial based on its finding that defendant would not be prejudiced by the fact that the victim heard defense counsel's opening statement and was still going to be allowed to testify.  *See Alter*, *supra* at 205, 659 N.W.2d 667.

There is no clearly established federal law requiring the sequestration of witnesses or a particular remedy when a sequestration order is violated.  *See Pillette v. Berghuis*, 408 F. App'x 873, 882 (6th Cir. 2010).  *See also Akrawi v. Jabe*, 979 F.2d 418, 423 (6th Cir. 1992) (finding no constitutional dimension to violation of sequestration order).  Therefore, the Michigan Court of Appeals decision was not contrary to or an unreasonable application of clearly-established federal law.

11

### D.  Jury Instruction on Aiding and Abetting

Next, Petitioner argues that the trial court erred in instructing the jury on aiding and abetting because the theory was not supported by the evidence presented.  Respondent argues that this claim is waived and procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (*quoting Cupp*, 414 U.S. at 147).

Here, the evidence presented at trial supported an aiding and abetting instruction.  Under Michigan law, to prove aiding and abetting of a crime, a prosecutor must show: (1) that the crime charged was committed by the defendant or some other person; (2) that the defendant performed acts or gave encouragement which assisted in the commission of the crime; and (3) that the

12

defendant intended the commission of the crime or had knowledge of the other's intent at the time he gave the aid or encouragement. *People v. Moore*, 470 Mich. 56, 67; 679 N.W.2d 41 (2004). Here, there was testimony that Ball knew where Ledbetter stored his valuables and that she visited Ledbetter's home after not having seen him for several months following his serious injury. Ledbetter did not know Hicks prior to Ball bringing Hicks to Ledbetter's home. Given these facts, it would have been reasonable to conclude that Ball was the mastermind behind the theft and Hicks merely assisted her in the commission of the crime. The aiding and abetting instruction, therefore, did not infect the trial with unfairness so as to violate due process.

### E. *Corpus Delecti* Rule

In his fifth claim, Petitioner argues that the *corpus delecti* of armed robbery was not established. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A state's "'rule of independent evidence, or *corpus delecti*, 'has no independent constitutional footing.'" *Phillips v. Lafler*, No. 06-15192, 2009 WL 1508343, *4 (E.D. Mich. May 28, 2009), *quoting Gribble v. Johnson*, 8 F. Supp. 2d 942, 955 (S.D. Tex.1998). Thus, the conclusion that sufficient evidence was presented to sustain the conviction is dispositive for habeas corpus review regardless of the alleged violation of the *corpus delecti* rule.

### F. Alleged Ineffective Assistance of Counsel

Finally, Hicks argues that his trial attorney was ineffective because he failed to call witnesses who would have contradicted Angela Ball's testimony that she left Hicks' company immediately after leaving Ledbetter's home and because he failed to effectively cross-examine John Ledbetter.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that Hicks failed to show counsel was ineffective for failing to present certain witnesses:

> We reject defendant's argument that he was denied his constitutional right to the effective assistance of counsel as a result of defense counsel's failure to present certain witnesses. Defendant has failed to present affidavits or offers of proof regarding what his proposed witnesses would have testified to, and thus, the witnesses' alleged prospective testimony is not of record. It is therefore impossible for defendant to establish that a reasonable probability exists that, if

14

defense counsel would have called the proposed witnesses, the outcome of the proceedings would have been different.  Accordingly, defendant's argument in this regard fails. *See Toma, supra* at 302-303, 613 N.W.2d 694; *People v. Davis*, 250 Mich.App. 357, 369, 649 N.W.2d 94 (2002) (holding that a defendant's ineffective assistance of counsel claim, which was based on his trial counsel's failure to call the defendant's proposed witnesses, failed when the defendant did not present affidavits regarding what his proposed witnesses would have testified to).

*Hicks*, 2009 WL 387728 at *3.

Hicks failed to provide in this Court or in the Michigan Court of Appeals affidavits from any of the witnesses he claims counsel was ineffective in failing to call.  Absent any indication from a source other than Hicks as to what the missing witnesses' testimony would have been, Hicks cannot show that he was prejudiced by his attorney's failure to call these witnesses.  In addition, even if counsel had called witnesses to testify that, rather than separating from Hicks immediately upon leaving Ledbetter's house, Ball had joined Hicks at a crack house, there is no reasonable likelihood the result of the proceeding would have been different.  If Ball indeed did smoke crack cocaine with Hicks after the assault, the jury may reasonably have concluded that Ball and Hicks acted together in robbing Ledbetter and then purchased drugs with their profit.  The testimony would not have been exculpatory for Hicks.  The Court finds no reasonable likelihood that, had the jury heard evidence that Ball stayed with Hicks that night, the jury would have concluded that Ledbetter's testimony regarding the assault was not credible.  The Court finds reasonable the state court's conclusion that Hicks failed to satisfy the burden under *Strickland*.

Second, Hicks claims counsel was ineffective for failing to effectively cross-examine Ledbetter.  He argues that counsel failed to question Ledbetter about inconsistencies between his

15

trial testimony and his preliminary examination testimony, and that counsel opened the door to testimony that supported the aiding and abetting instruction.

The Michigan Court of Appeals rejected this claim, holding:

> The record establishes that during defense counsel's cross-examination of the victim, he attempted to impeach the victim's credibility by demonstrating that he was an alcoholic with an unreliable memory, that his testimony was inconsistent with his statements to the police, that he adjusted his testimony after hearing defense counsel's opening statement, and that given that he was not severely injured by defendant's assault upon him, he must have exaggerated the extent of his prior injuries. The record therefore reflects that defense counsel's cross-examination of the victim did not fall below an objective standard of reasonableness. Furthermore, defendant has failed to establish what additional questions defense counsel should have asked the victim during cross-examination and how such questions would have affected the outcome of the proceedings. Accordingly, defendant's argument in this regard fails.

*Hicks,* 2009 WL 387728 at *4.

The Court has reviewed counsel's cross-examination of Ledbetter. The Michigan Court of Appeals' characterization of the cross-examination accurately summarizes counsel's approach. Defense counsel's cross-examination was effective and pointed. Contrary to Hicks' argument, defense counsel highlighted inconsistencies between Ledbetter's trial testimony and the police report. Hicks has failed to show that counsel's cross-examination of Ledbetter was ineffective. In addition, counsel's cross-examination did not open the door to an aiding and abetting instruction. Habeas relief is denied on this claim.

### G.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

16

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists could debate its holding on Petitioner's claim that his trial attorney was ineffective. Thus, the Court grants a COA as to that issue, and denies a COA as to the remaining issues.

### V. Conclusion

For the reasons stated, the Court **DENIES** the petition for a writ of habeas corpus. The Court **GRANTS** a certificate of appealability for Petitioner's ineffective assistance of counsel claim, and **DENIES** a certificate of appealability for Petitioner's remaining claims.

**SO ORDERED**.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: June 21, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 21, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

17